**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JASON SCOTT HEARST**                                                                                   **PLAINTIFF**

**V.**                                              **4:08CV04190-WRW**

**PROGRESSIVE FOAM TECHNOLOGIES, INC.
and BILL LARMAN**                                                                                    **DEFENDANTS**

<u>**ORDER**</u>

Pending is Plaintiff's Motion for Partial Summary Judgment (Doc. No. 16). Defendants have responded.[1]  As set out below, Plaintiff's Motion for Partial Summary Judgment is DENIED.

**I      BACKGROUND**

Plaintiff was hired by Defendant Progressive Foam Technologies, Inc. ("Progressive") on March 15, 2006, and suffered a non-work related injury on December 3, 2006.  In a January 3, 2007 "Response to Employee Request for Family or Medical Leave," Progressive informed Plaintiff that he was "**<u>eligible</u>** for leave under the FMLA" and that the "requested leave **<u>will</u>** be counted against your annual FMLA leave entitlement."[2]  On January 15, 2007, Plaintiff submitted a "Leave of Absence Application" requesting leave "to begin 1-3-07 and to end 2-5-07" for "Personal Medical" reasons.[3]  Plaintiff also submitted a doctor's statement that indicated that he could do "no work" for "4 weeks."[4]  In a letter dated February 21, 2007, Plaintiff's doctor

---

[1] Doc. No. 20.

[2] Doc. No. 20-5 (emphasis in original).

[3] Doc. No. 20-6.

[4] Doc. No. 20-7.

informed Progressive that Plaintiff had undergone surgery on February 6, 2007, and could "return to work April 10, 2007 with no restrictions."[5]

On February 26, 2007, Progressive notified Plaintiff that he was behind on insurance premiums and reminded him that on January 5, 2007, he had "signed an agreement saying [he was] placed on FMLA and the company would pay [his] premiums so that [his] insurance could continue."[6] Progressive sent a second, similar letter on March 21, 2007, because Plaintiff still had not paid his share of the premiums.[7]

On March 16, 2007, Progressive informed Plaintiff that "as of 3/28/07 [his] 12 weeks of leave under the federal Family and Medical Leave Act [would] be exhausted,"[8] but that his leave would be extended for an additional thirty days based on his physician's statement that Plaintiff could not return to work until April 10, 2007.[9] On March 29, 2007, Plaintiff's physician informed Progressive that Plaintiff had undergone another surgery, and that Plaintiff's return-to-work date would be April 23, 2007.[10] Plaintiff's physician, again, on April 10, 2007, moved Plaintiff's return to work date -- to May 1, 2007.[11]

Progressive terminated Plaintiff's employment on May 1, 2007.[12] Progressive informed Plaintiff that his "leave of absence [had] been exhausted" and that Progressive was uncertain of

---

[5]Doc. No. 20-8.

[6]Doc. No. 20-9.

[7]Doc. No. 20-4

[8]Doc. No. 20-12.

[9]*Id.*

[10]Doc. No. 20-15.

[11]Doc. No. 20-16.

[12]Doc. No. 15.

Plaintiff's "status to return to work."[13] Progressive notified Plaintiff that it was "putting [his] employment on in-active [sic] status" and that his "benefits will be terminated at the end of the business day 4/30/07 . . . ."[14]  On May 15, 2007, Plaintiff's physician notified Progressive that Plaintiff would not be able to return to work for two more months -- until July 15, 2007.[15]

Plaintiff filed this lawsuit on December 3, 2008.[16]

## II.   DISCUSSION

The Family Medical Leave Act entitles an "eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions" of the employee's job.[17]  An "eligible employee" is one who has been employed for at least twelve months, and worked for at least 1,250 hours during the twelve-month period.[18]

The material facts are undisputed: (1) in January, 2007, Plaintiff had worked for Progressive less than a year and was not an "eligible employee" under the terms of the FMLA;[19] (2) Plaintiff suffered from "a health condition," *i.e.*, a back injury that required surgery, that made him unable to perform his job; and (3) Progressive allowed Plaintiff 16 weeks of leave (twelve weeks of FMLA, plus four additional weeks) before terminating his employment on May 1, 2007.

---

[13]Doc. No. 20-17.

[14]*Id.*

[15]Doc. No. 20-18.

[16]Doc. No. 1.

[17]29 U.S.C. § 2612(a)(1)(D).

[18]29 U.S.C. § 2611(2)(A).

[19]*See* 29 U.S.C. § 2611(2)(A).

3

Plaintiff argues that, because he was not an "eligible employee" under the FMLA when his leave commenced on January 3, 2007, none of the leave used between then and March 16, 2007 (Plaintiff's one year anniversary) can be counted against his twelve weeks of FMLA leave.[20] In other words, Plaintiff contends that his leave did not, and could not have become FMLA leave until March 16, 2007, the date on which he was entitled to FMLA leave.  I disagree.

Whether knowingly or in error, Progressive determined that Plaintiff was an "eligible employee" entitled to FMLA leave starting January 3, 2007, and chose to extend FMLA leave to an employee who, statutorily, was not entitled to it.  From that point on, Plaintiff was considered to be on FMLA leave.[21]

Progressive was not required to grant Plaintiff twelve weeks of FMLA leave before he had worked for one year.  However, Progressive was entitled to adopt a more liberal policy, and to allow Plaintiff to take FMLA leave before his statutory eligibility.  An employer may choose to adopt a more generous leave policy and permit FMLA leave before the twelve month requirement is met.  The FMLA's twelve month employment provision was intended to protect employers, not employees.[22]  Allowing an employer to waive the twelve month employment requirement

---

[20]Doc. No. 16.

[21]Doc. Nos. 20-2, 20-5, 20-9, 20-12.

[22]*Fleece v. BFS Diversified, LLC*. 618 F. Supp. 2d 929, 934 (S.D. Ind. 2008) ("The language of the FMLA and its legislative history show that the twelve month and 1,250 hour requirements for eligibility were a critical part of the legislative compromise between the interests of employees and employers. See 139 Cong. Rec. H396-03, at 398 (Feb. 3, 1993) (statement of Rep. Roemer) (noting that the twelve month employment requirement protected the interests of employers).").

4

comports with the FMLA's language that "nothing in the Act is intended to discourage employers from adopting or retaining more generous leave policies."[23]

Equity trumps Plaintiff's position. It is well settled that equitable estoppel is an available remedy in FMLA cases.[24] However, the typical situation involves an employer designating an employee's leave as FMLA leave, the employee's reliance on the employer's representations, and the employer's later argument that the employee did not qualify for FMLA leave.[25] Just as an employer is prevented from granting FMLA leave then recanting, later arguing that the leave was not under the FMLA, an employee, for the same equitable reasons, cannot take leave -- that all parties believe to be FMLA leave -- only later to recant this position and demand twelve additional weeks.

Plaintiff asserts that "[l]eave that occurs before an employee becomes eligible does not count toward the 12 weeks entitled."[26] But Plaintiff provided no law to support this position. Additionally, Plaintiff contends that his absences "were not FMLA qualifying due to Plaintiff not yet being an 'eligible employee,'" and could not be counted against Plaintiff's "12 workweek allotment."[27] However, Plaintiff's argument incorrectly overlaps "FMLA qualifying" absences

---

[23] 29 C.F.R. § 825.700(b).

[24] *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (7th Cir. 2000); *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51 (2d Cir. 2001); *Mindard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352 (5th Cir. 2006).

[25] To the extent that Progressive argues that "Mr. Heart was not eligible [for FMLA leave] when he went on leave," (Doc. No. 21) the position is without merit. While Plaintiff may not have been "eligible" for FMLA leave in early January, Progressive determined that he was, and would now be equitably estopped from taking a position to the contrary.

[26] Doc. No. 16.

[27] *Id.*

with "FMLA eligibility." Once Progressive determined that Plaintiff was "eligible" for FMLA leave (even though Progressive was not obligated to do so at that point) and that the leave was for "a serious health condition" ("qualifying" Plaintiff for FMLA), Plaintiff was entitled to twelve weeks of FMLA leave. In keeping with Congress's intent of permitting more liberal leave policies, an employer should be permitted to waive the twelve month work requirement in order to provide an employee with FMLA leave before the employee is statutorily entitled to the leave. Notably, if Progressive had not waived the requirement in this case, Plaintiff likely would have been terminated for excessive absences before he ever became entitled to FMLA leave. Additionally, not only did Progressive grant Plaintiff the full twelve weeks of leave provided under the FMLA, it permitted Plaintiff to take four additional weeks of leave.

Punishing employers -- as Plaintiff would have me do here -- for adopting a more generous leave policy than the law requires is contrary to the purpose of the FMLA. Ultimately, adopting Plaintiff's position could adversely affect employees, *i.e.*, employers would be less likely to adopt leave policies more generous than those mandated by the FMLA.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED this 20th day of August, 2009.

/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE