**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JASON SCOTT HEARST                                                                 PLAINTIFF

V.                                    **4:08CV04190-WRW**

PROGRESSIVE FOAM TECHNOLOGIES, INC.,
and BILL LARMAN                                                                 DEFENDANTS

<u>**ORDER**</u>

Pending is Defendants' Motion for Summary Judgment (Doc. No. 31).  Plaintiff has

responded.[1]  Also pending is Plaintiff's Second Motion for Partial Summary Judgment

(Doc. No. 34), to which Defendants have responded.[2]

As set out below, Defendants' Motion for Summary Judgment is GRANTED, and

Plaintiff's Second Motion for Partial Summary Judgment is DENIED as MOOT.

**I        BACKGROUND**

Plaintiff raises claims under the Family Medical Leave Act of 1993 ("FMLA" or

"the Act"),[3] and ERISA, as amended by COBRA.[4]

Plaintiff Jason Hearst was hired by Defendant Progressive Foam Technologies, Inc.

("Progressive"), on March 15, 2006.[5]  Hearst suffered a non-work related injury on

---

[1]Doc. No. 42.

[2]Doc. No. 45.

[3]29 U.S.C. § 2612.

[4]Doc. No. 29; 29 U.S.C. § 1161.

[5]Doc. No. 32.

December 3, 2006,[6] which led to his request for leave from work.  In a January 3, 2007,

"Response to Employee Request for Family or Medical Leave," Progressive informed Hearst that

he was "eligible for leave under the FMLA" and that the "requested leave will be counted against

[his] annual FMLA leave entitlement."[7]  Hearst then submitted a "Leave of Absence Application"

requesting leave "to begin 1-3-07 and to end 2-5-07."[8]  He also submitted a doctor's statement

saying he could not work for four weeks.[9]  Hearst then signed a document acknowledging

Progressive's leave of absence policies.  That document stated in part that an employee's "failure

to return from a leave of absence on the agreed upon date without an approved extension will

result in termination for job abandonment."[10]

In a letter dated February 21, 2007, Hearst's doctor informed Progressive that Hearst had

undergone surgery on February 6, 2007, and could return to work April 10, 2007.[11]  Nothing in

the record indicates that Hearst himself informed Progressive that he in fact intended to return to

work on that date.

On March 16, 2007, Progressive informed Hearst that "as of 3/28/07 [his] 12 weeks of

leave under the federal Family and Medical Leave Act will be exhausted."[12]  But, because of

Hearst's physician's statement that he could not return to work until April 10, 2007, Progressive

---

[6]*Id.*

[7]Doc. No. 20-5.

[8]Doc. No. 20-6.

[9]Doc. No. 20-7.

[10]Doc. No. 20-6.

[11]Doc. No. 20-8.

[12]Doc. No. 20-12.

extended Hearst an additional thirty days leave -- until April 27, 2007.[13]  Progressive's letter also requested that Hearst, in accordance with FMLA policy, inform Progressive of his status and a specific return-to-work date.[14]

On March 29, 2007, Hearst's physician informed Progressive that Hearst had undergone another surgery, and that Hearst's return-to-work date would be April 23, 2007.[15]  Then, on April 10, 2007, Hearst's physician again moved Hearst's return-to-work date to May 1, 2007.[16] Nothing in the record indicates that Hearst informed Progressive, by May 1, 2007, of his intent to return to work on a specific date. Hearst also did not show up for work on May 1, 2007.

Progressive terminated Hearst's employment on May 1, 2007.[17]  In the termination letter, Progressive told Hearst that his "leave of absence has been exhausted" and that Progressive was uncertain of Hearst's "status to return to work."[18]  Progressive notified Hearst that it was "putting [his] employment on in-active [sic] status" for "job abandonment."[19]

On May 15, 2007, Hearst's physician notified Progressive that Hearst would not be able to return to work for two more months -- until July 15, 2007.[20]

---

[13]*Id.*

[14]*Id.*

[15]Doc. No. 20-15.

[16]Doc. No. 20-16.

[17]Doc. No. 15.

[18]Doc. No. 20-17.

[19]*Id.*

[20]Doc. No. 20-18.

Hearst filed this lawsuit on December 3, 2008.[21]  The Second Amended Complaint alleges that Defendants' interfered with Hearst's right to FMLA leave by making him take more leave than he needed or requested, and also by terminating his employment on May 1, 2007.[22]  Hearst also alleges that Defendants retaliated against him for taking FMLA leave.[23]  Finally, Hearst alleges that Progressive violated COBRA by failing to provide him with notice of his rights.[24]

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[25]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[26]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[27]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[28]  I must view the facts in the light most

---

[21]Doc. No. 1.

[22]Doc. No. 13.

[23]*Id.*

[24]*Id.*

[25]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[26]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[27]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[28]*Id.* at 728.

favorable to the party opposing the motion.[29]   The Eighth Circuit has also set out the burden of

the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact. It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is discharged, and, if the record
> in fact bears out the claim that no genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue. If the respondent fails to carry
> that burden, summary judgment should be granted.[30]

Only disputes over facts that may affect the outcome of the suit under governing law will properly

preclude the entry of summary judgment.[31]

## III.   DISCUSSION

### A.        Family Medical Leave Act

The FMLA establishes a right to unpaid family and medical leave for employees.[32]

Specifically, "[t]he FMLA provides eligible employees up to 12 work-weeks of unpaid leave

during any 12-month period"[33] for qualifying medical reasons.   The Act balances the interests of

both employees and employers:[34] it protects an employees' right to at least twelve weeks of

---

[29]*Id.* at 727-28.

[30]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)).

[31]*Anderson*, 477 U.S. at 248.

[32]See 29 U.S.C. § 2612.

[33]*Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2612).

[34]*Fleece v. BFS Diversified, LLC.*, 618 F. Supp. 2d 929, 934 (S.D. Ind. 2008) ("The language of the FMLA and its legislative history show that the twelve month and 1,250 hour requirements for eligibility were a critical part of the legislative compromise between the interests of employees and employers.).

unpaid leave for compelling medical reasons, and it protects employers from being required to extend leave to employees that have not yet worked a minimum of twelve months.[35]

Two types of claims exist to protect an employee's rights under the FMLA: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.[36]  Hearst raises both claims against Progressive.  But, Hearst is entitled to relief only if he qualifies as an "eligible employee" under the Act.[37]

### 1.  Hearst became an eligible employee on his one year anniversary date.

An "eligible employee" is one who has been employed for at least twelve months, and worked at least 1,250 hours during that twelve-month period.[38]  It is undisputed that, at the time Hearst took leave, he had not worked for Progressive for one year, even though he had worked 1,250 hours.[39]  So, at the time Hearst took leave he was not an "eligible employee" under the Act.[40]

The issue in this case, rather, is whether Hearst became an eligible employee on his one year anniversary date, while he was still on leave.  A review of the case law indicates that the

---

[35]See 139 Cong. Rec. H396-03, at 398 (Feb. 3, 1993) (statement of Rep. Roemer) (noting that the twelve month employment requirement protected the interests of employers).

[36]*Stallings v. Hussmann, Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

[37]See 29 U.S.C. § 2611(2)(A).

[38]29 U.S.C. § 2611(2)(A). All other elements of eligibility are undisputed by the parties.

[39]Doc. No. 32.

[40]*Id.*

Eighth Circuit has not clearly stated the rule of law on such facts.[41]  As a result, neither parties'

submissions cite controlling case law resolving the issue.  For the following reasons, I find that

Hearst did become an "eligible employee" on his one year anniversary date.

First, as of Hearst's one year anniversary, he met all of the FMLA's "eligible employee"

requirements under the plain language of the Act. As of that date, Hearst had worked the required

hours and had been employed for one year.[42]

Defendants argue that Hearst's anniversary date is not the relevant time to determine

Hearst's eligibility under the Act.  Instead, Defendants say eligibility can only be determined on

the day Hearst's leave started.  Under this interpretation of the FMLA, Defendants conclude that,

because Hearst was not eligible when his leave started, he has no cause of action under the

FMLA.[43]  I disagree with this interpretation.

---

[41]Because both parties initially assumed Hearst was FMLA eligible, this case presents a unique situation where, except that Hearst had not yet been employed for twelve months, it is undisputed that both parties had satisfied all other requirements of the FMLA (i.e., Hearst had worked the requisite hours, the leave was for an FMLA-qualifying reason, both parties had satisfied the various notice requirements of the FMLA, etc.).  Accordingly, my interpretation of the FMLA as applied to this case may not apply to other situations.

[42]See 29 U.S.C. § 2611(2)(A).

[43]Doc. No. 32.

Defendants cite non-controlling case law for the rule that FMLA eligibility is determined only at the time leave commences.[44]  Defendants' cited case (*Pennant v. Convergys Corp.*)[45] is inapplicable to Hearst's facts. That case relies on a Department of Labor ("DOL") Regulation for its holding.[46]  The relied-upon Regulation language reads: "The determination of whether an employee . . . has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start."[47]  But, this language does not apply to a determination of Hearst's eligibility -- it applies to the determination of eligibility for an employee beginning proper "FMLA leave."  Hearst was not starting "FMLA leave" in January, 2007, for exactly the reasons argued by Defendants: Hearst was not yet eligible under the Act, so Hearst was not actually given "FMLA leave."

Instead -- despite what Defendants' believed at the time -- Hearst was given non-FMLA leave.  And, the Regulation goes on to say, in the next sentence: "An employee may be on 'non-FMLA leave' *at the time he or she meets the eligibility requirements*, and in that event, any portion of the leave taken for an FMLA-qualifying reason *after the employee meets the eligibility*

---

[44]See Doc. No. 32. Defendants cite *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1310 (S.D. Fla. 2005) for this rule. *See Id.* at 1310. The other non-binding cases cited by the Defendants fail to apply for other reasons. See e.g.*, Seaman v. Downtown Partnership*, 991 F. Supp 751 (D. Md. 1998) (plaintiff requested and was approved for FMLA leave after having worked for the defendant only 6 months, but, while on leave and *before becoming eligible*, plaintiff's position was eliminated); and *Scheidecker v. Arvig Enterprises, Inc.*, 122 F. Supp. 2d. 1031 (D. Minn. 2000) (plaintiff was hired May 27, 1997, was granted leave less than a year later on April 14, 1998, and was fired *before* her one year anniversary on May 7, 1998).

[45]368 F. Supp. 2d 1307, 1310 (S.D. Fla. 2005) .

[46]*Pennant* relies on 29 C.F.R. § 825.110(d) for the rule Defendants argue here. See 368 F. Supp. 2d at 1310.

[47]29 C.F.R. § 825.110(d).

*requirement* would be 'FMLA leave.'"[48]  This sentence of the Regulation plainly states that

employees like Hearst, who are on non-FMLA leave at the time they meet the eligibility

requirements, become an "eligible employee" under the Act.  Defendants' cited Regulation

actually supports Hearst's eligibility on his one year anniversary.

Furthermore, and more important, the Act itself supports this conclusion.  The FMLA

explicitly directs that "nothing in the Act is intended to discourage employers from adopting or

retaining more generous leave policies."[49]  But, if employees cannot become FMLA-eligible

while taking pre-eligibility leave, employees in Hearst's situation would reasonably fear that

going on pre-eligibility leave would terminate their FMLA rights, even if they reach their

anniversary date.  Put another way, employers could grant early leave in order to avoid liability,

and employees in Hearst's situation would be disinclined to take early leave for that reason.

Because the FMLA explicitly requires that nothing in it should be interpreted to

discourage employers from creating more generous leave policies,[50] the FMLA should not be

interpreted to discourage employees from taking advantage of those generous leave policies; nor

should the FMLA be interpreted to allow employers to avoid FMLA liability by offering generous

leave policies.  These unacceptable results are avoided only by allowing employees in Hearst's

situation to become "eligible employees" on their one year anniversary date.

Under the DOL Regulations and the FMLA itself, Hearst became an "eligible employee"

on his anniversary date.

---

[48]*Id.* (emphasis added).

[49]29 C.F.R. § 825.700(b).

[50]*Id.*

### 2. Hearst's pre-eligibility leave counts against his FMLA leave entitlement.

The next issue is whether Hearst's pre-eligibility leave counts against his FMLA

entitlement to twelve weeks of leave.  A review of the case law again indicates that the Eighth

Circuit has not clearly stated the rule of law on such facts[51] and the parties have not cited

controlling authority on this point. For the following reasons, I find that Hearst's

pre-eligibility leave does count against his twelve week entitlement under the FMLA.

Hearst argues without citation of authority that, "[l]eave that occurs before an employee

becomes eligible does not count toward the 12 week entitlement."[52]  As a result of this

interpretation, Hearst believes that Progressive was required to give him twelve *additional* weeks

of FMLA leave -- until mid-June, 2007 -- when he became eligible.  Hearst concludes that,

because Progressive terminated his employment before mid-June, it violated his FMLA rights.[53]

---

[51]See Foot Note 36.

[52]Doc. No. 34.  Though Hearst does not cite it, this language apparently comes from the Secretary of Labor's comments made during the period in which the FMLA was first implemented. See 60 Fed. Reg. 2230 (1995).  The Secretary, in response to commenters' questions about whether pre-eligibility leave counts against FMLA entitlements, stated: "Leave granted under circumstances that do not meet FMLA's coverage, eligibility, or specified reasons for FMLA-qualifying leave may not be counted against FMLA's 12-week entitlement." 60 Fed. Reg. 2230 (1995) (discussing 29 C.F.R. § 825.300(a) (previous version)).   Though this comment appears to support Hearst's argument, I believe it has been implicitly invalidated by *Ragsdale v. Wolverine World Wide Inc*., 535 U.S. 81 (2002).  In *Ragsdale*, the Court affirmed the Eighth Circuit Court of Appeals' invalidation of a portion of the same Regulation to which the Secretary's comment was directed. See *Id*. at 95. (invalidating a portion of 29 C.F.R. § 825.300(a) (previous version)).  The Supreme Court held, contrary to the Regulation's directive, that even when an employer does not designate leave as FMLA-leave it must still be counted against the employee's twelve week entitlement under the FMLA. *Id*.  As a result, an employee in this situation will have been "granted leave under circumstances that do not meet FMLA's coverage."  But -- contrary to the Secretary of Labor's statement and the Regulation -- the Supreme Courts' holding requires that this leave must, in fact, count against the employee's twelve week entitlement.  Also, all of the rationales used by the Court to invalidate the Regulation at issue in *Ragsdale* equally invalidate Hearst's application of the Labor Secretary's comment at issue here.

[53]Doc. No. 42.

As noted, Hearst interprets the FMLA to prohibit pre-eligibility leave to count against his twelve week entitlement. I disagree.

First, Hearst's interpretation of the FMLA conflicts with the Act's direction that "nothing in the Act is intended to discourage employers from adopting or retaining more generous leave policies."[54]  If pre-eligibility leave time does not count against the FMLA's twelve week entitlement, employers likely would not adopt more generous leave policies for exactly the reason presented by this case -- an employee, like Hearst, could take leave for months before his one year anniversary, and then on that anniversary demand twelve additional weeks of leave.[55]  The FMLA should not be interpreted to discourage employers from adopting generous leave policies.

Second, Hearst's interpretation of the FMLA would transform Progressive's failure to correctly determine eligibility -- along with its refusal to grant Hearst more than twenty-four weeks of leave -- into an actionable violation of the FMLA.[56]  This would relieve employees of the "burden of proving any real impairment of their rights and resulting prejudice."[57]  It would also  "amend[] the FMLA's most fundamental substantive guarantee -- the employee's entitlement to a total of 12 work-weeks of leave" and "give[] certain employees a right to more than 12 weeks of FMLA-compliant leave in a given 1-year period."[58]

---

[54]29 C.F.R. § 825.700(b).

[55]See *Fleece v. BFS Diversified, LLC*. 618 F. Supp. 2d 929 (S.D. Ind. 2008) (recognizing, though not ruling on, this issue); see also *Ragsdale*, 535 U.S. at 92 (2002) (affirming an Eighth Circuit Court of Appeals decision finding a different Department of Labor FMLA Regulation invalid for essentially the same reason).

[56]See *Ragsdale*, 535 U.S. at 92.

[57]See *Id*. at 91.

[58]*Id*. at 93-94.

I  must view the FMLA as a "symmetrical and coherent regulatory scheme."[59]  Hearst's

interpretation of the FMLA does not reach coherent results.  Instead, I find that, "as long as

[Progressive's more generous leave] policies meet the Act's minimum requirements, [Hearst's]

leave taken may be counted toward the 12 weeks guaranteed by the FMLA" and "the FMLA

guaranteed . . . 12 -- not [24] -- weeks of leave."[60]  Hearst was granted leave on January, 3, 2007,

and once he became eligible on March 16, 2007, he was then entitled to FMLA leave

until March 28, 2007.

### B.      Hearst's Interference Claims

Hearst contends that Defendants interfered with his rights under the FMLA.  Hearst's

Second Amended Complaint alleges that Defendants: (1) interfered with Hearst's right to FMLA

leave by terminating him on May 1, 2007; and (2), interfered with his FMLA rights "by forcing

[him] to take more leave than [he] needed or requested . . . result[ing] in Hearst's twelve . . . week

FMLA entitlement being exhausted."[61]  In other words, Hearst's Second Amended Complaint

contains the contradictory allegations that, on the one hand, Defendants terminated his

employment before he was able to use all of his FMLA leave, and, on the other hand, Defendants

forced him to use up all of his FMLA leave before his employment was terminated.  Both of

Hearst's interference claims fail.

---

[59]*Gustafson v. Alloyd Co*., 513 U.S. 561, 569 (1995).

[60]See *Ragsdale*, 535 U.S. at 92 (holding a Department of Labor FMLA Regulation
invalid for essentially the same reasons Hearst's interpretation of the FMLA fails here).

[61]Doc. No. 17.

### 1.    Hearst's Termination as Interference

Under the interference theory, an employee can recover if he can show he was denied substantive rights he was entitled to under the FMLA.[62]  However, the Eighth Circuit recognizes that the substantive rights provided by the FMLA are not absolute, and an employee can only recover if he was denied substantive rights for a reason connected with his FMLA leave.[63]  In other words, the FMLA does not provide strict liability for interfering with an employee's FMLA rights, and "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."[64]  Finally, the employee has the burden of proving an impairment of his rights and the resulting prejudice of the employer's interference.[65]  To survive summary judgment Hearst must show a genuine dispute of material fact that: (1) he was entitled to the right to not have his employment terminated under the FMLA; (2), that he was denied that right for a reason connected with his FMLA leave; and (3) that he was prejudiced by the termination of his employment on May 1, 2007.

### i.    Hearst was not entitled to the right to not be terminated.

Hearst's claim fails because, by the termination of his employment on May 1, 2007, he was no longer on FMLA leave -- his twelve week entitlement to FMLA leave had expired on March 28, 2007.  "If an employee fails to return, prior to, or immediately upon, the expiration of

---

[62]*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

[63]*Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005).

[64]*Id.*

[65]See *Ragsdale*, 535 U.S. at 86.

qualified FMLA leave, the right to reinstatement dissipates."[66]  Hearst did not return to work on March 28, 2007, and so he was no longer entitled to the FMLA right to not be terminated.

Also, even if Hearst was still on FMLA leave at the time of his termination, an employee is entitled to certain substantive rights under the Act only when the employee complies with the requirements of the FMLA.[67]  On March 16, 2007, Progressive sent Hearst a letter that reads:

> Dear, Jason [Hearst]:
>
> I hope this letter finds you recovering well.  Regrettably, I must inform you that as of 3/28/07 your 12 weeks of leave under the federal Family and Medical Leave Act will be exhausted.  The state in which you are employed does not mandate any additional leave rights beyond this time period and all your accrued sick and vacation leave has been exhausted.
>
> In accordance with our FMLA policy and as is permitted by FMLA regulations, we require all employees on leave to provide notice of their intent to return to work.  We have received a notice from your physician that you would not be able to return to work till [sic] 4/10/07.  Progressive Foam Technologies is extending your leave an additional 30 days after the end of your FMLA.  If we do not hear from you regarding a specific return to work date, we are assuming you will not be returning to work in the foreseeable future.  As a result, and in accordance with our policy we must consider you to have abandoned your job . . . .[68]

This letter correctly states Progressive's FMLA right to require Hearst to report periodically on his status and his intent to return to work.[69]  Such a policy is permissible, since FMLA regulations specifically provide "[a]n employer may require an employee on FMLA leave to report

---

[66]See *Podkovich v. Glazer's Distribs. of Iowa, Inc.*, 446 F. Supp. 2d 982, 1001 (N.D. Iowa 2006).

[67]29 U.S.C. §§ 2612, 2614.

[68]Doc. No. 31-26.

[69]29 C.F.R. § 825.309(a) (now codified at 29 C.F.R. § 825.311(a)).

periodically on the employee's status and intent to return to work."[70]  Employers who enforce

such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA.[71]

Nothing in the record indicates that Hearst complied with Progressive's letter requesting

notice of his intent to return to work on a specific day.[72]  And, Hearst has not claimed that he did

not know of these requirements, or the consequences if he failed to provide the supplemental

information.[73]  Hearst also has not provided any evidence that Progressive's enforcement of these

policies was applied more strictly against him than other employees.[74]  Instead, Hearst argues that

he was owed additional FMLA leave time, and, in essence, that he could not be terminated for

any reason during that time.  Hearst is incorrect, since he was entitled to the substantive right to

not be terminated only if he complied with Progressive's request, and he did not.

> **ii.     Hearst was not denied the right to not be terminated for a reason connected with his FMLA leave**.

Alternatively, even if Hearst was still on FMLA leave at the time of his termination and he

was entitled to the right to not be terminated, Progressive presents evidence that it would have

reached the same decision to terminate Hearst's employment even if he had not exercised his

---

[70]*Id.*

[71]*Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 715 (8th Cir. 2008).

[72]Although Hearst's physicians had sent reports indicating various return to work dates, the facts of this case indicate that those reports were proving unreliable because they were constantly changing; and otherwise, Hearst himself never indicated that he actually intended to return to work on any of the dates reported by his physicians.

[73]FMLA regulations provide: "If an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against the employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f).

[74]See *Waltrip v. Conway Human Development Center*, No. 4:07CV00103 BSM, 2008 WL 4368788, *11 (E.D. Ark. filed Sept. 22, 2008).

FMLA rights.[75]  Progressive's leave of absence policies state that an employee's failure to return

from a leave of absence on the agreed-upon date without an approved extension will result in

termination for job abandonment.[76]  Hearst signed a document which explained this policy when

he began his leave.[77]  Hearst did not show up for work on May 1, 2007, contrary to Progressive's

leave of absence policies.  Hearst was placed on inactive status for "job abandonment" that

same day.

The Eighth Circuit Court of Appeals, in *Bacon v. Hennepin County Medical Center*,[78] held

there was no FMLA interference where an employee was terminated based on her failure to

comply with the employer's call-in policy.[79]  The employer's policy required an employee on

indefinite sick leave to call in absences every day, unless the employee otherwise specified a

tentative return-to-work date.[80]  The employee had not specified a return-to-work date, and failed

to call in for five consecutive days.[81]  Days later, the employee began to call in again, but the

employer terminated her for failing to comply with the call-in policy.[82]  The court upheld the

district court's determination that the employee did not state an interference claim under the

---

[75]See *Throneberry v. McGehee Desha County Hosp*., 403 F.3d 972, 977 (8th Cir. 2005) (holding that "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights").

[76]Doc. No. 20-6.

[77]*Id.*

[78]550 F.3d 711 (8th Cir. 2008).

[79]*Id.* at 715.

[80]*Id.* at 713.

[81]*Id.*

[82]*Id.*

FMLA.[83]  The employee was terminated for failing to comply with the employer's call-in policy, as she would have been terminated for doing so irrespective of whether those absences were related to FMLA leave.[84]

Hearst's claim fails for the same reason presented in *Bacon*.  The employee in *Bacon* violated the call-in policy by failing to call in.  Similarly, in violation of Progressive's leave policy, Hearst did not return to work on May 1, 2007.  As with the employer's enforcement of its call-in policy in *Bacon*, Progressive's enforcement of its policy does not violate the FMLA, because Progressive had a reason to terminate Hearst independent of his exercise of FMLA rights.[85]

### iii.   Hearst was not prejudiced by the termination of his employment on May 1, 2007.

Finally, Hearst's claim must fail because he has not demonstrated the resulting prejudice of Progressive's termination of his employment on May 1, 2007.[86]  The record shows that Hearst's employment would have been terminated even if Progressive had not done so on May 1, 2007.

Hearst's physician's note on May 15, 2007, notified Progressive that Hearst would not be able to return to work for two more months -- around July 15, 2007.[87]  But, even on Hearst's theory that he was owed more leave, his FMLA time would have expired in mid-June, 2007.  Hearst submits no evidence that he would have returned to work in mid-June (his physician's note

---

[83]*Id.* at 715.

[84]*Id.*

[85]See *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 715 (8th Cir. 2008).

[86]See *Ragsdale,* 535 U.S. at 86.

[87]Doc. No. 20-18.

stated he would not be able to return until July).  Progressive, on the other hand, has submitted

evidence that Hearst had no remaining leave time.[88]  So, the record only indicates that, if

Progressive had not terminated Hearst's employment for job abandonment on May 1, 2007, he

would have been terminated in mid-June, 2007, for the same reasons.  Hearst was not prejudiced

by his May 1, 2007, termination, because he would have been terminated anyway as of

mid-June, 2007.

Defendants are entitled to summary judgment on Hearst's claim that his termination

interfered with his FMLA rights. Hearst does not demonstrate a material issue of fact that: (1) he

was entitled to the right not to not have his employment terminated; (2) the reason for the

termination of his employment was connected with his FMLA leave; or (3), he was prejudiced by

the termination of his employment on May 1, 2007 (since he would have been terminated anyway

as of mid-June 2007).

### 2. Forcing Hearst to Take FMLA Leave as Interference

An employer may "interfere" with an employee's right to FMLA leave by forcing the

employee to take leave that he or she did not request or need.[89]  An involuntary leave claim

requires an employee to have been forced to take FMLA leave even though the employee does

not have a "serious health condition" that precludes him from working.[90]

As explained below, Hearst's allegations that he did not have a precluding health

condition are judicially estopped. Hearst first presented the involuntary leave claim in his Second

---

[88]See Doc. No. 50.

[89]*Heyne v. HGI-Lakeside, Inc.*, 589 F. Supp. 2d 1119, FN 13 (S.D. Iowa 2008)
(suggesting that this theory of interference has not been clearly adopted in this circuit).

[90]*Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007) ("An employee may
have a claim . . . when an employer forces an employee to take FMLA leave when the employee
does not have a "serious health condition" that precludes her from working.").

Amended Complaint.  Before his Second Amended Complaint, Hearst argued only that he was entitled to further FMLA leave after the date of his termination.  To be entitled to that FMLA leave, Hearst necessarily argued he had a "serious health condition" precluding him from working.  So, all the evidence presented by Hearst before to his Second Amended Complaint substantiates that claim.[91]

Contradicting his original claims, Hearst now argues, in effect, that he both did and did not have a "serious health condition" that precluded him from working.  This is because Hearst's new involuntary leave claim requires an employee to not have a precluding health condition.[92]

A party that takes a certain position in a legal proceeding, "and succeeds in maintaining that position," is prohibited from thereafter assuming a contrary position "simply because his interests have changed."[93]  Hearst's new and contradictory facts supporting his allegation that he did not have a precluding health condition are judicially estopped.  As a result, nothing in the record supports Hearst's allegation that he did not have a precluding health condition, and so he has failed to present a genuine dispute of material fact in that respect.

Also, even if Hearst did not have a precluding health condition, his involuntary leave claim must fail.  Hearst cites the Sixth Circuit case *Wysong v. Dow Chemical Co.*,[94] in support of his involuntary leave argument.  But, *Wysong* holds that an employee's claim for involuntary leave ripens only when and if the employee seeks FMLA leave at a later date, and such leave is

---

[91]See e.g., Plaintiff's First Motion for Partial Summary Judgment (Doc. No. 16), stating "[t]here can be no dispute that Hearst has a serious health condition," and supporting arguments.

[92]*Wysong*, 503 F.3d at 448.

[93]*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046-49 (8th Cir. 2006) (considering factors informing a court's judicial-estoppel analysis).

[94]503 F.3d 441 (6th Cir. 2007).

not available because the employee was wrongfully forced to use FMLA leave in the past.[95]

Hearst did not allege these facts, and so, as a matter of law, he can not win based on this theory.[96]

Because the theory of involuntary leave does not apply to Hearst's case, and because he is

judicially estopped from "playing fast and loose with the court"[97] regarding whether or not he has

a precluding health condition, Defendants are entitled to summary judgment on Hearst's

involuntary leave claim.

### 3. Retaliation

Defendants are entitled to summary judgment on Hearst's retaliation claim for many of the

same reasons as with his interference claims.  Under the retaliation theory, an employer may not

consider "an employee's use of FMLA leave as a negative factor in an employment action."[98]

An employee can prove retaliation through circumstantial evidence using the *McDonnell*

*Douglas* burden-shifting analysis.[99]  First, to establish a *prima facie* case of retaliation, Hearst

must show (1) that he engaged in a statutorily protected activity; (2) that he suffered an adverse

action subsequent to this activity; and (3) that there was a causal link between the protected

activity and the adverse action.[100]  Upon this showing, the burden shifts to Defendants to present a

---

[95]*Id*. at 448.

[96]See *Id*. (holding that an employee could not win on the involuntary leave theory as a matter of law when he did not allege the facts that he was forced to use FMLA in the past, at a later date sought FMLA leave, but that additional leave was denied because of his previous use of involuntary FMLA leave).

[97]*Stallings*,447 F.3d at 1050.

[98]*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir.2006) (citing *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)).

[99]*Smith v. Allen Health Sys.,Inc*., 302 F.3d 827, 832 (8th Cir. 2002).

[100]*Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

legitimate, non-discriminatory reason for Hearst's termination.[101]  Once Defendants provide such

a reason, the burden shifts back to Hearst to demonstrate that the stated reason was merely a

pretext for retaliation.[102]  To survive summary judgment on this claim, Hearst must present

evidence that: "(1) creates a question of fact regarding whether [the Defendants] reason was

pretextual and (2) creates a reasonable inference that [the Defendants] acted in retaliation."[103]

Even if Hearst established a *prima facie* case of retaliation, his claim would still fail.

Hearst has not demonstrated that Defendants' non-discriminatory reason for terminating his

employment is merely pretext.[104]  According to the record, Progressive terminated Hearst's

employment because he failed to follow the company's leave of absence policy.  Hearst failed to

show up to work on May 1, 2007.  When Hearst failed to show up for work, Progressive

terminated his employment for the reason of "job abandonment."

Hearst offers no evidence to suggest that Progressive's proffered reason is pretext for

retaliation.  And, it is unlikely that Hearst could show pretext.  The record demonstrates that, at

the time of Hearst's termination, both parties still believed Hearst had exhausted his FMLA leave

the previous month -- and, Progressive then gave Hearst thirty days additional leave (this appears

to me to be generous).  Defendants are entitled to summary judgment on Hearst's retaliation claim

because he has not presented evidence establishing a disputed issue of material fact that

Progressive's reason for terminating him was pretext.

### C.     Hearst's COBRA claims

---

[101]*Hite*, 446 F.3d at 865.

[102]*Id*.

[103]*Id*. (quoting *Smith*, 302 F.3d at 833).

[104]See *Lewis v. Holsum of Fort Wayne, Inc*., 278 F.3d 706, 711 (7th Cir. 2002) (finding
that an employer who fired an employee for failing to follow its call-in policy was entitled to
summary judgment on the employee's retaliation claim).

COBRA requires that employers give former employees the opportunity to continue their health insurance under the employer's plan if a qualifying event occurs.[105]   It is undisputed that Progressive's termination of Hearst's employment on May 1, 2007, was a qualifying event under COBRA, and triggered Progressive's duty to notify Hearst of his right to continue his health coverage.[106]   Count II of Hearst's Complaint alleges that Progressive failed to provide Hearst with this notice.[107]   It is the employer's burden to establish that the notice was mailed to the last known address of the employee.[108]   The employer does not have to offer evidence that the beneficiary actually received notice, but must demonstrate that the notice was sent "by means reasonably calculated to reach the recipient."[109]   Such evidence raises the presumption of receipt.[110]

Progressive presents sufficient evidence to raise the presumption of receipt.   Progressive employed a third party COBRA administrator.[111]   Progressive presents evidence that when the third party administrator receives notice of a qualifying event, it processes, prints, and mails the election notice to the beneficiary.[112]   Those events are presented to a clerk at the United States

---

[105]29 U.S.C. § 1161 (1988).

[106]See 29 U.S.C. § 1166(a)(4)(A).

[107]Doc. No. 29.

[108]*Stanton v. Larry Fowler Trucking*, 52 F.3d 723 (8th Cir. 1995).

[109]*Crotty v. Dakotacare Administrative Services, Inc.*, 455 F.3d 828, 831 (8th Cir. 2006) ("the administrator must provide something that indicates that its mailing system was reliable and that the system was followed in the relevant instance.").

[110]*Id.*; see also *Phillips v. Riverside*, 796 F. Supp. 403, 407 (E.D. Ark. 1992) (discussing mailing presumption in COBRA context).

[111]See Doc. No. 31-29.

[112]*Id.*

Post Office with the notices to be mailed.[113]  The post office clerk verifies that each item being mailed corresponds to the names on the manifest, and stamps the manifest to show evidence of mailing.[114]  Hearst's notice was mailed to him on May 3, 2007, as evidenced by the daily manifest stamped by the USPS on that day.[115]

Hearst claims he did not receive this notice.  He cites *Stanton v. Larry Fowler Trucking*[116] for the rule that, when the evidence on the issue is equal, it is to be resolved against the party bearing the burden of proof.[117]  In *Stanton*, the plaintiff testified at trial that he never received notice from the employer, and then the employer testified that she personally handed the employee the notice.[118]  This was equal evidence, and absent further documentary evidence to support the employer's burden of proof, the Court held that the presumption of receipt was not raised.[119]

The evidence in Hearst's case is not equal, and the presumption of receipt is raised. *Stanton* explicitly states that, "cases involving mailing of a properly addressed . . . COBRA notice . . . involve a presumption of receipt . . . ."[120]  Unlike the defendant in *Stanton*, Progressive has

---

[113]*Id.*

[114]*Id.*

[115]*Id.*

[116]52 F.3d 723 (8th Cir. 1995).

[117]Doc. No. 42.

[118]*Stanton*, 52 F.3d at 729.

[119]See *Id.*

[120]*Id.*

provided evidence that notice was properly addressed and mailed to Hearst.[121]  Hearst's bare

assertion that he did not receive notice is not equal evidence, and the presumption of receipt

is raised.

Progressive is entitled to summary judgment on Hearst's claim: Hearst has not raised a

material issue of disputed fact based only on his unsupported statement that he did not

receive notice.[122]

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion for

Summary Judgment  (Doc. No. 31) is GRANTED, and Plaintiff's Second Partial Motion for

Summary Judgment (Doc. No. 34), is DENIED as MOOT.

IT IS SO ORDERED this 12th day of January, 2010.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[121]*Id.*

[122]See *LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 691 (8th Cir. 2001) (holding that conclusory statements alone are insufficient to withstand a summary judgment motion); see also *Southern Md. Hosp. Ctr. v. Herb Gordon Auto World, Inc*., 6 F. Supp. 2d 461, 465-66 (D. Md. 1998) (awarding summary judgment to employer despite the employee's assertion that he never received notification, where administrator provided the court with a photocopy of the notice envelope properly addressed to the employee).